**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

FRANKLIN,

Plaintiff,

v. Civil Action No. 3:26cv384

VIRGINIA COMMONWEALTH UNIVERSITY HEALTH SYSTEM,

Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) (ECF No. 5) (the "Motion to Dismiss"), Defendant's MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS I, II, AND IV (ECF No. 6), PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I, II, AND IV (ECF No. 8), and DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I, II, AND IV OF PLAINTIFF'S COMPLAINT (ECF No. 9). For the reasons set forth below, the Motion to Dismiss will be denied as to COUNTS I and II granted as to COUNT IV.

**BACKGROUND**

Tameka Franklin ("Franklin") is a former employee of Defendant, Virginia Commonwealth University Health System ("VCUH"). Franklin was hired on October 15, 2023, as a Patient Access Supervisor and was promoted to Patient Access Business

Manager 8 weeks after being hired. ECF No. 1 at 2. During her employment, she was the only Black manager. Id.

From November 2023 until her termination, Franklin worked as a Patient Business Services Manager II. Id. at 3. In this role, she was responsible for daily operational leadership across multiple outpatient locations. Id. She was responsible for oversight of pre-registration, insurance verification, authorizations, and patient registration, ensuring all functions aligned with VCUH's organizational standards and revenue cycle requirements. Id. She acted as the primary liaison between outpatient departments and revenue cycle leadership, ensuring compliance with performance metrics, service-level agreements, and regulatory standards. Id.

Franklin was also responsible for strategic planning, resource allocation, and space utilization based on departmental needs. Id. She evaluated and improved departmental workflows, implemented new operational policies, and led initiatives to enhance patient satisfaction and streamline processes. Id. She provided coaching, mentorship, and training to a cross-functional administrative team that she supervised and developed. Id. At the time of her departure, Franklin alleges that she was performing her job satisfactorily, had no disciplinary history, and had received a positive performance review. Id.

Before her departure, Franklin experienced several issues in the workplace. Id. She reported numerous concerns of perceived unethical behavior by colleagues, unfair treatment, and inequitable enforcement of company policies. Id. In particular, she complained that two subordinate directors were permitted to work from home, adjust their time, and circumvent scheduling requirements during a storm, but when Franklin attempted to make similar adjustments she was accused of wage theft. Id. Additionally, she observed and reported several other policy violations and unethical behaviors and was told by Human Resources to "get on board." Id. at 4.

Franklin also reported her superior for allowing white employees to avoid reprimand for failing to follow procedures related to time adjustments, attendance, and work-from-home policies. Id. She also reprimanded other colleagues for misconduct or policy violations, and she herself was reprimanded or prevented from performing her job duties. Id. Franklin was frequently advised to leave issues alone and ignore misconduct. Id.

It is alleged that Franklin reported several instances of misconduct to the AVP of Revenue Cycle, Employee Relations, the HR Business Partner, and other VCUH executives. Id. Her complaints were ignored, and her colleagues began to treat her poorly. Id.

And, Franklin claims that she was deliberately excluded from meetings, reports, and emails pertaining to her team and role. Id.

Moreover, it is charged that when Franklin complained about a white director, her claim was ignored, and, when she attempted to follow up on the complaint, she was informed that the complaint had been closed without investigation. Id. at 4-5. However, once other white employees began complaining about the same director, the director was terminated. Id. at 4. According to Franklin, this is an illustration of disparate treatment based on race. Id. at 5.

In addition to disparate treatment based on race, Franklin alleges that she was discriminated against based on disability. Id. She asserts that she suffers from anxiety, depression, and ADHD, and has documented these disabilities since 2005. Id. In January 2025, Franklin submitted a formal ADA accommodation request accompanied by medical documentation. Id. In March 2025, Human Resources denied the request without explanation. Id.

The COMPLAINT asserts that, following both Franklin's repeated reports to executives about disparate treatment based on race and her ADA accommodation request, VCUH began treating her differently. Id. Specifically, she says that she was isolated, excluded from meetings, removed from communications, and stripped of information needed to perform her job duties. Id. at 5-6. She also asserts that she was given a negative performance evaluation

shortly after her complaints and shortly before her ADA accommodation request. Id. at 6.

These issues escalated until Franklin was terminated on May 9, 2025. Id. VCUH's reason for terminating Franklin was "adjusting a time sheet" and "submitting documentation about an employee issue." ECF No. 1-1. Franklin alleges that VCUH's stated reasons for the termination were pretextual, false, and inconsistent with its treatment of white employees who engaged in comparable or more serious conduct but were not terminated. ECF No. 1 at 6.

So, on June 2, 2025, Franklin filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Id. at 2. She received a Right to Sue Notice on February 5, 2026. Id.

On May 5, 2026, Franklin filed this action, alleging race discrimination, retaliation, hostile work environment, wrongful termination, and failure to accommodate in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, and the Americans with Disabilities Act ("ADA"), 41 U.S.C. § 12101. VCUH filed DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) on August 17, 2026. ECF No. 5. On August 31, 2026, Franklin filed PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I, II, AND IV. ECF No. 8. On September 8, 2026, VCUH filed DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I, II, AND IV OF PLAINTIFF'S COMPLAINT. ECF No. 9.

## STANDARD OF REVIEW

A complaint shall state a plausible claim upon which relief can be granted. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). A motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). A complaint need not contain detailed factual allegations. Harris v. Postmaster Gen. of the U.S., No. 3:18-cv-334, 2019 U.S. Dist. LEXIS 42966 at *5 (E.D. Va. Mar. 14, 2019). Rather, Fed. R. Civ. P. 8(a) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief...." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015).

When reviewing a motion under Rule 12(b)(6), the Court shall accept as true the factual allegations of the complaint and construe all inferences in the light most favorable to the nonmovant. Rockville Cars LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). However, the Court need not accept as true legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986).

**ANALYSIS**

**I. Franklin Has Exhausted Her Administrative Remedies.**

"Before pursuing a lawsuit under Title VII or the ADA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC." Hoffman v. Inova Health Care Servs., 169 F.4th 207, 218 (4th Cir. 2026). This requirement ensures that the employer is on notice of the alleged violations and allows the EEOC an opportunity to resolve employment discrimination disputes. Id. The EEOC charge defines the scope of a plaintiff's subsequent right to initiate a civil suit. Id. The allegations contained in the EEOC charge generally limit the scope of the subsequent civil complaint. Id.

a. COUNT I - Race Discrimination

VCUH argues that Franklin has not exhausted her administrative remedies as to COUNT I. ECF No. 6 at 6-8. VCUH cites several decisions in which courts have prevented plaintiffs from asserting theories of discrimination in civil suits that were not previously asserted in the EEOC administrative charge. Id. at 7. In Bryant v. Bell Atl. Md., Inc., the Fourth Circuit held that a plaintiff could not assert a gender discrimination claim when the EEOC Charge alleged only racial discrimination. 288 F.3d 124, 132-33 (4th Cir. 2002). In Lawson v. Burlington Indus., Inc., the Fourth Circuit prevented a plaintiff from asserting a failure to

rehire claim when the EEOC Charge alleged only wrongful termination. 683 F.2d 862, 863-64 (4th Cir. 1982). And in Sloop v. Mem'l Mission Hosp., Inc., the Fourth Circuit barred a Title VII retaliation claim when the EEOC Charge only asserted age discrimination. 198 F.3d 147, 149 (4th Cir. 1999).

VCUH emphasizes Taylor v. Va. Union Univ., 193 F.3d 219, 228 (4th Cir. 1999), wherein the plaintiff alleged gender discrimination against her employer with the EEOC. In her EEOC Charge, she alleged that her supervisor called her several times at home for things that could have waited until the following workday, that he touched her on the arm several times, that he stated that he had hired her because he liked her, and that he had called her into his office for hours at a time. Id. The plaintiff claimed that these facts were sufficient to allege a sexual harassment claim even though her charge never explicitly mentioned sexual harassment. Id.

The Fourth Circuit noted that the allegations were extremely vague. Id. at 239. It explained that the plaintiff's allegations did not raise the inference that these actions were done in a manner that had the intent or effect of sexually harassing the plaintiff. Id. The Fourth Circuit also observed that the actions the plaintiff complained of were normal for an employer-employee relationship. Id. As a result, the Court of Appeals held that the

plaintiff had not exhausted her administrative remedies with respect to her sexual harassment claim. Id.

VCUH claims that here, Franklin's EEOC Charge was similarly vague, ECF No. 6 at 7-8, arguing that "[a]bsent from Ms. Franklin's Charge... is any factual assertion that her supervisor's alleged conduct was at all related to Ms. Franklin's race or that Ms. Franklin was terminated because of her race." Id. at 8. VCUH further asserts that the only allegations in the COMPLAINT are vague assertions that Franklin's supervisor "undermined her, prohibited her from enforcing policies or correcting performance issues, and excluded and isolated her." Id.

However, VCUH ignores critical information from the EEOC Charge. There, Franklin stated that "[t]here were other supervisors who are not Black and who engaged in similar actions were not disciplined, let alone discharged." ECF No. 1-1. She further stated that she "was subjected to discrimination and discharged because of [her] race (Black)...." Id. Unlike the plaintiff in Taylor, here Franklin has placed VCUH on notice of the alleged violations of Title VII and has given the EEOC an opportunity to resolve them. Nor are Franklin's allegations vague or conclusory. Instead, she alleges that similarly situated non-Black employees were treated more favorably than her. And, unlike the plaintiffs in Bryant, Lawson, and Sloop, Franklin has clearly

alleged racial discrimination in her EEOC Charge. In sum, she has exhausted her administrative remedies with respect to COUNT I.

b. COUNT II - Retaliation

In COUNT II of the COMPLAINT, Franklin alleges that she engaged in protected activity by reporting discrimination, harassment, and policy violations, and by requesting ADA accommodations. ECF No. 1 at 7. VCUH argues that Franklin failed to exhaust her administrative remedies as to COUNT II, contending that the only mention of retaliation in the EEOC Charge is the "conclusory allegation" that Franklin's supervisor retaliated when she attempted to address concerns. ECF No. 6 at 8.

Again, VCUH overlooks several of the allegations in the EEOC Charge. For instance, there she said that, from the beginning of her employment, she reported policy violations and unethical behavior, and that her direct supervisor "retaliated" when she attempted to address concerns. ECF No. 1-1. She also claimed to have repeatedly raised concerns about her supervisor's treatment to executive leaders in the company. Id. After her supervisor was terminated, she was told that all her claims had been closed. Id. She was then discharged. Id. She was told that the reason for her discharge was adjusting a time sheet and submitting documentation about an employee issue. Id. This was not an offense for which other employees were terminated. Id.

Moreover, the EEOC Charge states that Franklin submitted a formal request for reasonable accommodation under the ADA, that she provided complete medical documentation including an ADA form completed by her licensed healthcare provider, and that she was informed two months later that her request was denied, but that, although she was not given a reason for the denial of the accommodation, she believed that the accommodation was denied because of her disability. Id.

The factual allegations in the EEOC Charge are the same facts that form the basis of COUNT II. Both the Charge and the COMPLAINT allege that Franklin's supervisor retaliated against her following reports of unethical behavior and a disability accommodation request. Thus, Franklin has exhausted her administrative remedies with respect to COUNT II.

c. COUNT IV - Hostile Work Environment

VCUH argues that Franklin's hostile work environment claim was not exhausted through the EEOC Charge. ECF No. 6 at 7. VCUH again likens Franklin's claim to Taylor v. Va. Union Univ., 193 F.3d 219 (4th Cir. 1999). VCUH asserts that the EEOC Charge contains vague assertions that "her supervisor undermined her, prohibited her from enforcing policies or correcting performance issues, and excluded and isolated her." ECF No. 6 at 8. However, the EEOC Charge actually contains many of the same factual

allegations as the COMPLAINT. For example, the EEOC Charge states that Franklin's supervisor consistently undermined her authority, blocked her from enforcing policy, refused to allow her to formally address staff misconduct, discouraged her from correcting performance issues, excluded her from key communications, denied her access to important systems, and isolated her from peer managers. ECF No. 1-1. When Franklin reported her supervisor's behavior to executive leadership, she was told that her claims had been closed. Id. These are largely the same facts that form the basis of Franklin's hostile work environment claim in the COMPLAINT. That the COMPLAINT contains more detailed factual allegations than the EEOC Charge does not render the Charge insufficient where, as here, the essence of the two are the same. As such, Franklin has exhausted her administrative remedies with respect to COUNT IV.

**II. Plaintiff Has Plausibly Stated A Claim For Relief On Some Counts.**

a. COUNT I – Race Discrimination

To state a claim for Title VII discrimination, a plaintiff has two options. Bourne v. Tex. Roadhouse Spotsylvania Location, No. 3:24-cv-218, 2025 U.S. Dist. LEXIS 30998 at *5 (E.D. Va. Feb. 20, 2025). She must either (1) demonstrate that her race was a

motivating factor in the employer's adverse employment action or (2) establish a prima facie case of race discrimination. Id.

To establish a prima facie case of race discrimination under Title VII, a plaintiff is required to show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly situated employees outside the protected class received more favorable treatment. White v. BFI Waste Servs., Inc., 375 F.3d 288, 295 (4th Cir. 2004). Although a plaintiff need not establish a prima facie case of race discrimination in her pleading, she is required to allege specific facts to connect the adverse employment action to a protected characteristic. McCleary-Evans v. Md. Dept. of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002).

VCUH argues that Franklin has not met the requirements for either pleading option. ECF No. 6 at 9. First, VCUH argues that Franklin failed to demonstrate that her race was a motivating factor in the decision to fire her, thereby failing the first option. Id. The COMPLAINT alleges that VCUH's stated reasons for her termination were "false, pretextual, and inconsistent with Defendant's treatment of similarly situated non-Black employees who engaged in comparable or more serious conduct but were not

terminated." ECF No. 1 at 6. So, even though the COMPLAINT alleges that non-Black employees were treated differently, that alone does not demonstrate that race was a motivating factor in her termination. Thus COUNT I does not satisfy the first option for adequately pleading a race discrimination claim.

However, the COMPLAINT adequately sets out sufficient facts to support a prima facie case of race discrimination. First, it alleges that Franklin is a member of a protected class because she is Black. ECF No. 1 at 1. Second, it alleges that Franklin performed her job satisfactorily by alleging that she was promoted eight weeks after being hired; she had no disciplinary history; and had received a performance rating of "meets expectations." Id. at 2-3. Third, the COMPLAINT alleges that VCUH took an adverse employment action when it fired her. Id. at 6. Finally, the COMPLAINT alleges that similarly situated non-Black employees received more favorable treatment.[1] In sum, Franklin sufficiently alleges facts to establish a prima facie case of race discrimination in violation of Title VII. Thus, the MOTION TO DISMISS will be denied as to COUNT I.

---

[1] Franklin alleged that white directors were permitted to work from home, adjust their time, and circumvent scheduling requirements, but when Franklin adjusted her time, she was accused of wage theft. Id. at 3, 6. She also alleged that her complaints about a white director were ignored, while complaints made by white employees about that same director were taken seriously. Id. at 4.

b. COUNT II - Retaliation

**i. Title VII Retaliation**

To plausibly state a claim for retaliation under Title VII, "a plaintiff must establish a prima facie claim of retaliation by showing: (1) that she engaged in protected activity, (2) that the employer took a materially adverse action against her and (3) there is a causal connection between the protected activity and the adverse action." Bourne v. Texas Roadhouse Spotsylvania Location, No. 3:24-cv-218, 2025 U.S. Dist. LEXIS 30998 at *9. (E.D. Va. Feb. 20, 2025) (citation modified). A complaint to a superior about suspected violations of Title VII is a protected activity. Id.

Establishing a causal relationship, the third requirement, is not an onerous burden. Smith v. CSRA, 12 F.4th 396, 417 (4th Cir. 2021). There are two ways for a plaintiff to demonstrate that a protected activity caused an adverse action. Id. First, an employee may allege facts suggesting that the adverse action occurred because of the protected activity. Id. Alternatively, "an employee may establish *prima facie* causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." Strothers v. City of Laurel, Md., 895 F.3d 317, 335-36 (4th Cir. 2018) (citation modified).

VCUH takes the view that the COMPLAINT alleges only "generalized unethical behavior, policy violations and enforcement, discrimination, harassment, and unfair treatment...." ECF No. 6 at 12. That, says VCUH, does not rise to the level of protected activity. Id. But that assessment loses sight of the allegations of disparate treatment based on race. For example, the COMPLAINT says that Franklin reported her superior for allowing white employees to avoid reprimand for conduct that Franklin was reprimanded for and that Franklin reported discrimination and opposed preferential treatment of non-Black employees. ECF No. 1 at 4-6. Although generalized complaints of policy violations may not constitute protected activity under Title VII, reports of race discrimination are protected. Thus, the COMPLAINT alleges that Franklin engaged in protected activity, and that VCUH took an adverse employment action against her by terminating her.

Moreover, the COMPLAINT alleges a causal connection between the protected activity and Franklin's termination through the first Smith route. That is, it has alleged facts sufficient to adequately charge that Franklin was terminated because of her reports. In particular, the COMPLAINT identifies a sequence of events in which Franklin reported race discrimination and then received warnings from Human Resources to "get on board" and "leave issues alone" and ignore misconduct. ECF No. 1 at 4. Those

allegations are sufficient to permit an inference that Franklin was fired in retaliation for her reports of race discrimination.

As to the second Smith route, Franklin has pled that her employer understood, or should have understood, Franklin to be engaged in protected activity when she complained about disparate treatment between Black and non-Black employees.

However, the COMPLAINT does not tell that Franklin was terminated shortly after the protected activity. To begin, the COMPLAINT does not detail the dates on which Franklin reported race discrimination. Instead, it only states that, during a storm in 2025, two directors were permitted to make time adjustments, and that, when Franklin attempted to do the same, she was accused of wage theft. Id. Nor does the COMPLAINT state whether these two directors were non-Black employees who were treated more favorably than Franklin. According to the COMPLAINT, Franklin was terminated on May 9, 2025, but the COMPLAINT does not establish the timeline leading up to her termination. However, because the COMPLAINT sufficiently alleges causation through the first Smith route, COUNT II plausibly pleads a Title VII retaliation claim.

**ii. ADA Retaliation**

"To state a claim for wrongful retaliation under the ADA, a plaintiff must allege (i) that she engaged in protected activity; and, (ii) because of the activity; (iii) her employer took an

adverse employment action against her." Mickens v. Serco, Inc., No. 1:24-cv-1014, 2025 U.S. Dist. LEXIS 58523 at *10 (E.D. Va. Mar. 27, 2025). Submitting a request for accommodation constitutes protected activity under the ADA. Id.

The COMPLAINT sufficiently alleges that Franklin engaged in protected activity by filing a request for accommodation. ECF No. 1 at 5. It also pleads adequately that VCUH took an adverse employment action against her by terminating her employment. Id. at 6.

As to the causal link between the protected activity and the adverse employment action, it is alleged that Franklin submitted the requested accommodation in January 2025, that it was denied in March 2025, and that in May 2025, Franklin was terminated. Id. at 5-6. There were approximately four months between the requested accommodation and the adverse employment action. "[F]our months between the protected activity and adverse employment action is sufficient to establish a causal connection at the prima facie stage." Thomas v. City of Annapolis, Md., 851 Fed. Appx. 341, 350 (4th Cir. 2021). Therefore, COUNT II plausibly states a claim for retaliation in violation of the ADA.

c. COUNT IV - Hostile Work Environment

A hostile work environment claim has four required elements: (1) the plaintiff "experienced unwelcome harassment; (2) the

harassment was based on her gender or race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Evans v. Int'l Paper Co., 936 F.3d 183, 192 (4th Cir. 2019). Franklin also is required to allege that her protected characteristic was the but-for cause of the alleged harassment. Laurent-Workman v. Wormuth, 54 F.4th 201, 210 (4th Cir. 2022).

The first element of a hostile work environment claim, unwelcome harassment, is not a high hurdle. Strothers, 895 F.3d at 328. An employee may show that conduct is unwelcome simply by voicing her objection to the harasser or the employer. Id. at 328-29. Here, the COMPLAINT contains numerous allegations that Franklin reported the race discrimination she experienced. This adequately pleads that the harassment was unwelcome.

Second, the harassment must be based on gender or race. In assessing that factor, courts look to the context surrounding the employer's actions. Id. at 329. The COMPLAINT plausibly pleads that Franklin's white co-workers received favorable treatment concerning remote work, scheduling, time adjustments, attendance, and policy enforcement, and that VCU Health System attributed more weight to white employees' reports of misconduct. ECF No. 1. These

allegations support the inference that Franklin's exclusion and discipline (the asserted hostility) were based on race.

The third factor is a high bar to clear. Evans, 936 F.3d at 192. "The severe or pervasive element has both a subjective and objective component." Id. To clear this bar, the COMPLAINT must allege that Franklin subjectively perceived the environment to be hostile and abusive. Id. The Court then must also determine whether a reasonable person in the plaintiff's position would find the environment objectively hostile or abusive. Id.

Courts "consider several factors to evaluate whether the alleged working conditions are severe or pervasive enough to support a Title VII claim. These factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." Laurent-Workman, 54 F.4th at 211 (citation modified).

VCUH relies on Decoster v. Becerra, 119 F.4th 332 (4th Cir. 2024), for the proposition that even long-lasting harassment does not necessarily rise to the level of a hostile work environment. ECF No. 6 at 14. In Decoster, the plaintiff was subjected to seven months of harassment, consisting of intimidating conduct, rumors of her incompetence, being singled out in front of colleagues,

being accused of failing in her position, speaking to her with contempt, treating her with disdain, and providing negative performance reviews. 119 F.4th at 338. The Fourth Circuit held that those acts were neither severe nor pervasive. Id. at 339.

In so doing, the Court of Appeals contrasted Decoster with Parker v. Reema Consulting Servs., Inc., in which a female employee experienced rumors that she had a sexual relationship with a manager to obtain a promotion. 915 F.3d 297, 300 (4th Cir. 2019). In Parker, the harassment was severe because it preoccupied not only the plaintiff, but also managers and employees at the workplace for the entire time of her employment following her promotion. Id. at 304. Moreover, a manager slammed a door in the plaintiff's face and screamed at her about the rumor during a staff meeting. Id. at 305. Unlike the severe and pervasive harassment in Parker, the harassment in Decoster did not involve attacks on the plaintiff's personal character, undermine her supervisory authority, or lead to threats on her physical safety. 119 F.4th at 339.

This case is more like Decoster than Parker. Like the plaintiff in Decoster, Franklin experienced long-lasting harassment. Franklin's supervisor is alleged to have undermined her authority, blocked her from enforcing policy, excluded her from communications, and isolated her from other managers. ECF No.

1 at 4. Also, it is alleged that Franklin was excluded from meetings, reports, and emails pertaining to her team and role. Id. She allegedly was accused of wage theft when she tried to adjust her time sheets, and she is said to have received an unwarranted performance evaluation that reduced her merit increase. Id. at 3, 5-6.

None of these allegations clear Title VII's high bar of severe and pervasive conduct. Franklin was neither physically threatened, nor was she abused. Neither was her character attacked. While the alleged conduct likely interfered with Franklin's ability to do her work, that alone is insufficient to establish severe and pervasive harassment. Considering the totality of the circumstances, the working conditions alleged in COUNT IV were neither severe nor pervasive.[2]

Because the COMPLAINT does not adequately allege that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, COUNT IV fails to state a claim for hostile work environment.

---

[2] The fourth factor, that there is a basis for imposing liability on the employer, is met here because the complained of conduct involved Franklin's supervisor, Human Resources, Employee Relations, the HR Business Partner, the AVP of Revenue Cycle, and other executives. ECF No. 1 at 4-5.

**CONCLUSION**

For the reasons set forth above, DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) will be DENIED as to COUNTS I and II and GRANTED as to COUNT IV.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 1, 2026